**Reuel J. FOREMAN and Evelyn M. Foreman, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 92–5143.

United States Court of Appeals, Federal Circuit.

July 19, 1995.

Rehearing Denied Sept. 15, 1995.

H. Stewart Dunn, Jr., Ivins, Phillips & Barker, Washington, DC, argued for plaintiffs-appellants.

Teresa Milton, Atty., Dept. of Justice, Washington, DC, argued for defendant-appellee. With her on the brief were Michael L. Paup, Acting Asst. Atty. Gen. and Gary R. Allen, Atty., of counsel was Kevin M. Brown.

Before NIES, Circuit Judge, SMITH, Senior Circuit Judge and MAYER, Circuit Judge.

Opinion for the court filed by Senior Circuit Judge EDWARD S. SMITH. Dissenting opinion filed by Circuit Judge Mayer.

EDWARD S. SMITH, Senior Circuit Judge.

■ Reuel J. Foreman[1] appeals the judgment of the United States Court of Federal Claims[2] dismissing his claim for refund of an overpayment of federal individual income tax. *Foreman v. United States,* 26 Cl.Ct. 553 (1992). That court dismissed Foreman's claim for lack of subject matter jurisdiction because it found that the statute

---

**1.** Evelyn Foreman is included as a plaintiff only because she was included on the joint tax return filed by the Foremans.

**2.** Foreman filed suit in the United States Claims Court, now the United States Court of Federal Claims. The court is referred to as the United States Court of Federal Claims throughout the opinion.

under which Foreman sought a refund had been implicitly repealed.

We hold that the United States Court of Federal Claims did have subject matter jurisdiction to hear Foreman's claim. However, we agree with the Court of Federal Claims that the statute on which Foreman's claim for refund is based has been repealed, and therefore we affirm the dismissal of his claim on that ground.

## Background

Reuel Foreman filed suit in the United States Court of Federal Claims seeking a refund of taxes he allegedly overpaid for the taxable calendar year 1982. Foreman claimed that section 11(c) of the Revenue Act of 1962, the "grandfather clause", created an unlimited exclusion for foreign earned income to which there existed a right on March 12, 1962, and that income he received in 1982 as reimbursement for moving expenses qualified for the exclusion.

Foreman was hired to work as an accountant by the Arabian American Oil Company ("Aramco") in 1952. He worked for Aramco in Saudi Arabia continuously for 30 years until his retirement in 1982. Beginning before March 12, 1962 the Aramco Industrial Relations Manual (Manual) contained a provision providing for the reimbursement of moving expenses for certain employees upon termination.[3] When Foreman retired in 1982 he and his wife moved to England and Aramco reimbursed them $40,232 for their moving expenses. Foreman included this amount as income on his 1982 tax return. In 1983 Foreman filed an amended return and sought

refund of $19,647. Foreman's request was based on the grandfather clause, on the Treasury regulations promulgated under § 911 of the Internal Revenue Code of 1954 implementing the grandfather clause, and on the United States Tax Court's decision in the *Hills* and *Voss* cases.[4]

The I.R.S. allowed a refund of $1,721 but rejected the bulk of Foreman's request and disallowed a refund of $17,926.[5] Foreman then brought suit in the Court of Federal Claims seeking refund of the $17,926 tax paid incident to the moving expenses reimbursement.

The Court of Federal Claims held that the statute upon which Foreman based his claim, section 11(c) of the Revenue Act of 1962, had been implicitly repealed by the Foreign Earned Income Act of 1978. Because the court found that its jurisdiction depended upon the repealed statute, the court dismissed Foreman's claim for lack of subject matter jurisdiction. This appeal followed.

## Subject Matter Jurisdiction

The Federal Circuit exercises full and independent review of questions of law. *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 762, 9 U.S.P.Q.2d 1417, 1421 (Fed.Cir.1988), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989). Dismissal of a claim for lack of subject matter jurisdiction is a question of law subject to full and independent review. *Booth v. United States*, 990 F.2d 617, 619 (Fed.Cir.1993).

The Court of Federal Claims dismissed Foreman's claim on the ground that because the statute which supported his claim had

---

3. The Manual provides for the payment by Aramco of reasonable moving expenses for all "Senior Staff U.S. Dollar Payroll" employees upon termination of employment with Aramco.

4. *Hills v. Commissioner*, 72 T.C. 958, 1979 WL 3718 (1979). Hills and Voss were Aramco employees who received moving expense reimbursements in 1973. *Id.* The Tax Court ruled that Hills and Voss were entitled to exclude the moving expense reimbursements from their income based on the grandfather clause in the Revenue Act of 1962 then in effect. *Id.* Because we hold

that the Foreign Earned Income Act of 1978 repealed the grandfather clause contained in the Revenue Act of 1962, that clause, which entitled Hills and Voss to exclude the moving expense reimbursements from their income, was no longer in effect when Foreman received his reimbursement.

5. The I.R.S. allowed a $1,721 refund related to a housing exclusion but it disallowed the portion of the refund based on the grandfather clause.

been implicitly repealed, the court no longer had a valid basis for exercising subject matter jurisdiction. The court cited *Hendrix v. United States*, 219 U.S. 79, 81, 31 S.Ct. 193, 194, 55 L.Ed. 102 (1911), *overruled on other grounds by Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933) for the proposition that when "the jurisdiction of a cause depends upon a statute, the repeal of the statute takes away the jurisdiction, and causes pending at the time fall, unless saved by provision of the statute." This proposition is not incorrect, it is simply inapplicable to the facts of this case.

■ The trial court erred in finding that its subject matter jurisdiction was dependent upon a repealed statute. The statute defining subject matter jurisdiction for the United States Court of Federal Claims is the Tucker Act, which provides, in pertinent part, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department...." 28 U.S.C. § 1491(a) (1994). Foreman's claim was founded upon 26 U.S.C. § 7422, which grants taxpayers the right to sue the United States for "recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected," provided that the taxpayer first files a claim for refund. 26 U.S.C. § 7422 (1989). The Court of Federal Claims has concurrent jurisdiction with the district courts over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected...." 28 U.S.C. § 1346(a)(1) (1993).

Foreman's complaint fairly pleaded a claim for refund of allegedly illegally assessed income taxes. Because Foreman had the right to sue for refund of taxes erroneously paid under 26 U.S.C. § 7422, and because the Court of Federal Claims has jurisdiction under 28 U.S.C. §§ 1346 and 1491 to hear claims for refund of taxes, the Court of Federal Claims had subject matter jurisdiction over Foreman's claim even if his claim was without merit. The issue whether the grandfather clause which was the basis of Foreman's claim had been repealed was an issue that went to the merits of his claim, and did not affect the court's exercise of subject matter jurisdiction. The Court of Federal Claims erred in holding that it did not have subject matter jurisdiction. *Law v. United States*, 11 F.3d 1061, 1065 (Fed.Cir.1993) ("That [a] claim fails on the merits does not negate the jurisdiction.").

*Exclusion of Foreign Earned Income*

We begin the discussion of the merits of Foreman's claim with a brief review of the history of the treatment of foreign earned income. In 1926 Congress established an exemption from taxation for all foreign earned income of U.S. citizens who established foreign residency and sold U.S. products abroad. Revenue Act of 1926, Pub.L. No. 20, § 213, 44 Stat. 26. In 1954 Congress amended and reenacted the unlimited exclusion as § 911 of the Internal Revenue Code of 1954, Pub.L. No. 591, ch. 736, 68A Stat. 289.

In 1962 Congress placed a ceiling on the amount of foreign earned income which could be excluded from taxation. Revenue Act of 1962, Pub.L. No. 87–834, 76 Stat. 960. Section 11(a) of the 1962 Act replaced the old § 911 of the 1954 Code with a new § 911 which limited the foreign earned income exclusion to $20,000 or $35,000, depending on how much time the taxpayer had spent outside of the country.

Section 11(c), the "effective dates" provision of the 1962 Act, read as follows:

**Effective Dates.—**

**(1) Amendment to section 911.**—The amendment made by subsection (a) shall apply to taxable years ending after September 4, 1962, but only with respect to amounts—

.    .    .    .    .

(B) received after December 31, 1962, which are attributable to services per-

formed on or before December 31, 1962, unless on March 12, 1962, there existed a right (whether forfeitable or nonforfeitable) to receive such amounts.

Revenue Act of 1962, Pub.L. No. 87–834, § 11(c), 76 Stat. 960.

Section 11(c)(1)(B) allowed taxpayers to retain an unlimited exclusion for amounts received in years subsequent to 1962 if the taxpayer had a "right" to the income on March 12, 1962. This section thus operated as an exception to the dollar limitations on exclusions introduced by the 1962 Act, and has been called the grandfather clause of the 1962 Act. Foreman claims that this clause entitles him to exclude the moving expense reimbursement from his income because, under the Aramco Manual, he had a "right" to that reimbursement as of March 12, 1962.

In 1978, Congress again revised the taxation of United States citizens working abroad. This was accomplished through a complete overhaul of the § 911 exclusion in the Foreign Earned Income Act of 1978, Pub.L. No. 95–615, 92 Stat. 3098. Indeed, the actual exclusion contained in § 911 was narrowed to apply only to U.S. citizens who resided in a camp located in a hardship area. Section 913 was also added by the 1978 Act and created deductions for various "expenses of living abroad." Foreign Earned Income Act of 1978, Pub.L. No. 95–615, § 203, 92 Stat. 3098, 3100. The effect of the total revision of § 911 and the addition of § 913 was to convert what would have been exclusions under the 1962 amendments for most U.S. citizens working abroad into exclusions for some citizens (those living in hardship areas) and deductions of certain foreign living costs for all other citizens working abroad. The 1978 Act did not mention the effective dates clause of the 1962 Act, section 11(c) above, nor were any of the words from that clause carried over into the new effective dates clause for the 1978 Act.

■ The Court of Federal Claims held that the 1978 Act implicitly repealed section 11(c) of the 1962 Act and therefore the grandfather clause was no longer in effect during the 1982 tax year. We agree. The 1978 Act completely revamped the way foreign earned income was taxed. Although implicit repeals of statutes are highly disfavored, where a later statute "covers the whole situation of the earlier one and is clearly intended as a substitute", then the later act operates as a repeal. *Randall v. Loftsgaarden,* 478 U.S. 647, 661, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1985) (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (quoting *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936))). A later statute may also implicitly repeal a former statute where there is an "irreconcilable conflict" or "clear repugnancy" between the two. *Randall,* 478 U.S. at 661, 106 S.Ct. at 3151–52 ("irreconcilable conflict"); *United States v. Fausto,* 484 U.S. 439, 453, 108 S.Ct. 668, 676–77, 98 L.Ed.2d 830 (1987) ("clear repugnancy").

The 1978 Act did not replace section 11(c) of the 1962 Act, the grandfather clause on which Foreman relies, but the 1978 Act did replace most of the substantive law of § 911 enacted by section 11(a) of the 1962 Act. Section 11(c) was the "effective dates" provision for the § 911 enacted by section 11(a) of the 1962 Act. Section 11(c) referred to the substantive law of section 11(a) in specifying the taxable years to which the 1962 amendments applied and in defining exceptions to the amendments. Section 11(c) of the 1962 Act contained an exception to the § 911 limitation on the amount of foreign income that could be exempted.

Under the new § 911, as amended by the 1978 Act, no foreign income can be exempted except for income earned in camps located in hardship areas. The exemption limitation to which section 11(c) was an exception simply no longer exists because, except for hardship areas, there is no longer any exemption, with or without limitation, and thus there is no longer any reason for an exception to that exemption limitation. Section 11(c) is inconsistent with the amended § 911 because section 11(c) is an exception to an aspect of

§ 911 as amended by the 1962 Act, the exemption limitation, which was effectively removed from the statute by the 1978 Act. Section 11(c) refers to, and is an exception to, substantive law which is no longer in effect. Section 11(c) is thus in conflict with § 911 as amended by the 1978 Act and is implicitly repealed by the 1978 Act.

Because the statute on which Foreman's claim for refund rests was implicitly repealed by the 1978 Act, the Court of Federal Claims' dismissal of his claim for refund is

**AFFIRMED.**

MAYER, Circuit Judge, dissenting.

I dissent because I do not believe Congress implicitly repealed section 11(c) of the Revenue Act of 1962, Pub.L. No. 87–834, 76 Stat. 960. Because repeal by implication is strongly disfavored, it is found only where an enactment is in irreconcilable conflict with an earlier statute, or where the enactment so comprehensively covers the subject matter of the earlier statute that it can only be seen as a substitute. *Traynor v. Turnage*, 485 U.S. 535, 547, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988); *Randall v. Loftsgaarden*, 478 U.S. 647, 661, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1986); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). In either case, Congress' intention to repeal the earlier statute must be "clear and manifest." *Radzanower*, 426 U.S. at 154, 96 S.Ct. at 1993; *Neptune Mut. Ass'n v. United States*, 862 F.2d 1546, 1551 (Fed.Cir.1988).

Both the Revenue Act of 1962 and the Foreign Earned Income Act of 1978, Pub.L. No. 95–615, 92 Stat. 3098, amended section 911 of the Internal Revenue Code of 1954, Pub.L. No. 83–591, 68A Stat. 289. Before the 1962 Act, United States citizens residing in a foreign country could exclude an unlimited amount of income earned overseas from their taxable income. Section 11(a) of the 1962 Act limited the amount of this exclusion, but section 11(c) prevented retroactive application of the new limit. Specifically, section 11(c)(1)(B) allowed taxpayers to continue receiving an unlimited exclusion for any income received after 1962 if they had a forfeitable or nonforfeitable right to that income on March 12, 1962.

Nothing in the 1978 Act's revisions to the foreign earned income taxation scheme, as sweeping as the revisions were, is irreconcilable with maintaining the rights preserved by section 11(c) of the 1962 Act. Even though section 11(a) of the 1962 Act was repealed by substitution of provisions from the 1978 Act, the savings provisions of section 11(c) are not irreconcilable with those amendments. Where a statute is implicitly repealed, any reconcilable provision of the earlier enactment must be upheld. *United States v. Fausto*, 484 U.S. 439, 452–54, 108 S.Ct. 668, 676–77, 98 L.Ed.2d 830 (1988); *Radzanower*, 426 U.S. at 154–55, 96 S.Ct. at 1993. The amendments of the 1978 Act were entirely prospective and simply did not address the grandfathered right to exclude income provided by section 11(c). Section 11(c) provides only a limited grandfathered right to exclude income earned before a certain date. One is prospective, the other retrospective; there is no conflict. Since the 1978 Act did not address the grandfather provision of section 11(c), it also cannot be that the 1978 Act comprehensively covered it.

The legislative history of the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 111, 95 Stat. 190 which also amended section 911 of the Internal Revenue Code, specifically says that Congress did not intend to repeal the savings provisions of section 11(c). H.R.Rep. No. 201, 97th Cong., 1st Sess. 62 (1981); H.R.Conf.Rep. No. 215, 97th Cong., 1st Sess. 205 (1981). The government's observation that the legislative history of the 1981 Act cannot revive or reenact section 11(c) misses the point. The Foremans do not argue that the legislative history reenacted section 11(c), but that it was never repealed in the first place. I agree and the 1981 legislative history is in accord. Section 11(c) provides an important substantive right and is not just an administrative provision that expired by its own terms because section 11(a) was repealed.

The government's alternative argument that the Court of Federal Claims granted summary judgment on the merits in footnote 2, and the accompanying text, of its opinion is also deficient. The trial court's gratuitous comment on the merits is not adequate alternative support for the judgment, especially when it did not believe it had subject matter jurisdiction.